Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISSLAW LLP**
9107 Wilshire Blvd., Suite 450
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile:  310/209-2348

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN BUSHANSKY, On Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>RESTORATION ROBOTICS, INC., RYAN RHODES, FREDERIC MOLL, JEFFREY BIRD, GIL KLIMAN, CRAIG TAYLOR, SHELLEY THUNEN, and KEITH SULLIVAN,<br><br>Defendants. | Case No.<br><br><u>CLASS ACTION</u><br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Stephen Bushansky ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

- 1 -
CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

## NATURE OF THE ACTION

1. This is a class action brought by Plaintiff on behalf of himself and the public stockholders of Restoration Robotics, Inc. ("Restoration Robotics" or the "Company") against Restoration Robotics and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a stock issuance (the "Stock Issuance") in connection with a proposed transaction, pursuant to which Radiant Merger Sub, Ltd., ("Merger Sub") a direct, wholly-owned subsidiary of Restoration Robotics, will merge with and into Venus Concept Ltd ("Venus"), with Venus continuing as the surviving corporation and a direct wholly-owned subsidiary of Restoration Robotics (the "Proposed Transaction").

2. On March 15, 2019, Restoration Robotics and Venus issued a joint press release announcing they had entered into an Agreement and Plan of Merger and Reorganization dated March 15, 2019 (the "Merger Agreement") to combine the companies in an all-stock transaction, whereby, each ordinary share of Venus and each preferred share of Venus will be converted into the right to receive 8.6506 shares of Restoration Robotics common stock, subject to adjustment (the "Exchange Ratio"). Restoration Robotics and Venus Concept shareholders will own approximately 15% and 85% of the combined company, respectively, on a fully diluted basis, without giving effect to the shares issued in the proposed equity financing that is expected to close immediately after the merger.

3. On September 10, 2019, defendants filed a proxy statement/prospectus on Form 424B3 (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Restoration Robotics stockholders vote in favor of the Stock Issuance, omits or misrepresents material information concerning, among other things: (i) Restoration Robotics' and Venus'

financial projections, relied upon by the Company's financial advisor, SVB Leerink LLC ("SVB Leerink"), in its financial analyses; (ii) the valuation analyses performed by Restoration Robotics' financial advisor SVB Leerink regarding the Proposed Transaction; and (iii) potential conflicts of interest faced by Company insiders and SVB Leerink.  Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.   In short, unless remedied, Restoration Robotics' public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting decision on the Stock Issuance.  Plaintiff seeks to enjoin the stockholder vote on the Stock Issuance unless and until such Exchange Act violations are cured.

**JURISDICTION AND VENUE**

5.   This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

6.   This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.   Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists.  Restoration Robotics is incorporated in Delaware and is headquartered in this District.  Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

# THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Restoration Robotics.

9. Defendant Restoration Robotics is a Delaware corporation and maintains its principal executive offices at 128 Baytech Drive, San Jose, California 95134. Restoration Robotics' common stock is traded on the NASDAQ Global Select Market under the ticker symbol "HAIR."

10. Defendant Ryan Rhodes ("Rhodes") has served as President, Chief Executive Officer ("CEO") and a director of the Company since July 2016.

11. Defendant Frederic Moll ("Moll") has served as Chairman of the Board and a director of the Company since November 2002.

12. Defendant Jeffrey Bird ("Bird") has been a director of the Company since July 2005.

13. Defendant Gil Kliman ("Kliman") has been a director of the Company since July 2007.

14. Defendant Craig Taylor ("Taylor") has been a director of the Company since March 2017.

15. Defendant Shelley Thunen ("Thunen") has been a director of the Company since July 2015.

16. Defendant Keith Sullivan ("Sullivan") has been a director of the Company since July 2018.

17. Defendants identified in paragraphs 10-16 are collectively referred to herein as the "Board" or the "Individual Defendants."

# OTHER RELEVANT ENTITIES

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

18. Venus is an innovative global medical technology company that develops, commercializes, and delivers minimally invasive and non-invasive medical aesthetic technologies and related practice enhancement services.

19. Merger Sub is a direct, wholly-owned subsidiary of Restoration Robotics and was formed solely for the purpose of carrying out the merger.

## CLASS ACTION ALLEGATIONS

20. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own Restoration Robotics common stock (the "Class"). Excluded from the Class are defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

21. Plaintiff's claims are properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.

22. The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class. As of September 6, 2019, there were 40,857,012 shares of Company common stock outstanding. All members of the Class may be identified from records maintained by Restoration Robotics or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

23. Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, *inter alia*:

   (a) Whether the Individual Defendants have violated Section 14(a) of the Exchange Act;

(b) Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

(c) Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated.

24. Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent. Plaintiff has retained competent counsel experienced in litigation of this nature.

25. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

26. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

**SUBSTANTIVE ALLEGATIONS**

**Company Background and the Proposed Transaction**

27. Restoration Robotics is a medical technology company developing and commercializing, the ARTAS System, a robotic device that assists physicians in performing many of the repetitive tasks that are a part of a follicular unit extraction surgery, a type of hair restoration procedure. Restoration Robotics believes the ARTAS System is the first and only physician-assisted robotic system that can identify and dissect hair follicular units directly from the scalp and create recipient implant sites. The ARTAS System includes the ARTAS Hair Studio application, an interactive three-dimensional patient consultation tool that enables a physician to create a simulated hair transplant model for use in patient consultations. Restoration Robotics received clearance from

the U.S. Food and Drug Administration ("FDA"), in April 2011 to market the ARTAS System in the U.S., and has sold the ARTAS System into 37 other countries.

28. In March 2018, Restoration Robotics received 510(k) clearance from the FDA to expand the ARTAS technology to include implantation, and in the third quarter of 2018, Restoration Robotics commercially launched the next generation ARTAS System, called ARTAS iX System, which incorporates the implantation functionality as well as other functionalities.

29. As of December 31, 2018, the ARTAS System and ARTAS Hair Studio application are protected by over 80 patents in the U.S. and over 110 international patents.

30. On March 15, 2019, Restoration Robotics announced its fourth quarter 2018 and full year 2018 financial results. The Company reported revenue in the fourth quarter of 2018 of $6.7 million, a 14% increase from $5.9 million in the fourth quarter of 2017. Additionally, revenue for 2018 was $22.0 million, a 3% increase from $21.3 million for 2017.

31. On May 15, 2019, Restoration Robotics announced its first quarter 2019 financial results. For the quarter, revenue was $5.4 million, an 8% increase from $5.0 million in the first quarter of 2018. Additionally, gross margin in the first quarter of 2019 was 54% compared to 36% in the first quarter of 2018. The change in gross margin for the first quarter was driven by a higher average selling price per system sold during the period and ongoing cost reduction initiatives. Moreover, the Company sold 14 ARTAS Systems in the first quarter, including 11 ARTAS iX Systems, 8 of which were sold in the U.S. and 3 in EMEA.

32. Also, on March 15, 2019, Restoration Robotics and Venus issued a joint press release announcing the Proposed Transaction that stated, in relevant part:

> SAN JOSE, CA and TORONTO, CANADA, March 15, 2019 — Restoration Robotics, Inc. ("Restoration Robotics") (NASDAQ: HAIR), a global leader in robotic hair restoration, and Venus Concept Ltd. ("Venus Concept"), a privately-held global aesthetic technology leader, announced today that they have entered into a definitive merger agreement to combine the companies in an all-stock transaction.

> The transaction is expected to close in the third quarter of 2019, subject to customary closing conditions, including the approval by stockholders of Restoration Robotics and Venus Concept and receipt of all necessary regulatory approvals.
>
> **Transaction Structure**:
>
> Under the terms of the transaction, Restoration Robotics and Venus Concept shareholders will own approximately 15% and 85% of the combined company, respectively, on a fully diluted basis, without giving effect to the shares issued in the proposed equity financing that is expected to close immediately after the merger. EW Healthcare Partners has committed to lead a $21 million equity investment, priced at $0.825 per share (subject to adjustment for stock splits), in the combined company's common stock contingent on the closing of the merger transaction. Additional investors committed to participating in the proposed equity financing include HealthQuest Capital, Madryn Asset Management, Longitude Capital Management, Fred Moll and Aperture Venture Partners. In addition to the equity financing, Fred Moll and InterWest Partners previously funded a $5 million convertible note into Restoration Robotics which will convert into the combined company's common stock at the closing of the equity financing led the EW Healthcare, at a price of $0.825 per share (subject to adjustment for stock splits).
>
> Concurrent with closing of the transaction, the Company anticipates effecting a reverse stock split. The Company expects to have approximately 283.2 million shares outstanding (or approximately 18.9 million shares outstanding after giving effect to an anticipated 1-for-15 reverse stock split) and after taking into account shares issued to the former Venus Concept shareholders in the merger, shares issued as part of the $21 million equity investment, and shares issued upon conversion of the $5 million convertible notes.

**Insiders' Interests in the Proposed Transaction**

33. Restoration Robotics insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and Restoration Robotics' public stockholders.

34. The Company's insiders stand to reap substantial financial benefits for securing the deal with Venus. For example, in connection with entering into the Merger Agreement, the Board approved a cash bonus payable to Mark Hair ("Hair"), the Company's Chief Financial Officer, in the amount of $142,500.00, and a cash bonus payable to defendant Sullivan, the Company's Chief

Commercial Officer and a member of the Board, in the amount of $90,000.00, payable upon the closing of the Proposed Transaction.

35. Additionally, as of August 14, 2019, Restoration Robotics' executive officers held in the aggregate 81,878 shares of Restoration Robotics common stock, and as of December 31, 2018, the directors held in the aggregate 3,624,722 shares of Restoration Robotics common stock, including 90,000 shares of restricted Restoration Robotics common stock.  Under the Merger Agreement, each share of Restoration Robotics common stock that is issued and outstanding at the effective time of the merger will remain issued and outstanding and such shares, subject to the reverse stock split to be effected in connection with the Proposed Transaction, will be unaffected by the merger.  Restoration Robotics estimates that the aggregate amount that would be payable in settlement of the Restoration Robotics common stock held by Restoration Robotics' non-employee directors and executive officers assuming that the merger was completed on August 14, 2019 is $2,692,444 and $60,819, assuming each executive were to experience a qualifying termination immediately following such date.

36. Moreover, if they are terminated in connection with the Proposed Transaction, Restoration Robotics' named executive officers stand to receive substantial cash severance payments in the form of golden parachute compensation, as set forth in the following table:

| Name | Cash ($) (1) | Equity ($) (2) | Perquisites/ Benefits ($) (3) | Total ($) |
|---|---|---|---|---|
| Ryan Rhodes | 285,126 | 0 | 10,184 | 295,310 |
| Mark Hair | 361,456 | 371,400 | 19,040 | 751,896 |
| Chris Aronson | 46,667 | 0 | 4,814 | 51,481 |

**The Proxy Statement Contains Numerous Material Misstatements or Omissions**

37. Defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Restoration Robotics' stockholders.  The Proxy Statement misrepresents

or omits material information that is necessary for the Company's stockholders to make an informed voting decision in connection with the Proposed Transaction.

38.     Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Restoration Robotics' and Venus' financial projections, relied upon by the Company's financial advisor, SVB Leerink, in its financial analyses; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor SVB Leerink; and (iii) potential conflicts of interest faced by Company insiders and SVB Leerink.

***Material Omissions Concerning Restoration Robotics' and Venus' Financial Projections***

39.     The Proxy Statement omits material information regarding the Company's and Venus' financial projections provided by Restoration Robotics' and Venus' management and relied upon by SVB Leerink for its analyses.

40.     For example, in connection with SVB Leerink's *Restoration Robotics Valuation Analysis—Discounted Cash Flow Analysis*, the Proxy Statement sets forth:

> A discounted cash flow analysis is a traditional valuation methodology used to derive a valuation of an asset or set of assets by calculating the "present value" of estimated future cash flows of the asset or set of assets. "Present value" refers to the current value of future cash flows or amounts and is obtained by discounting those future cash flows or amounts by a discount rate that takes into account macroeconomic assumptions and estimates of risk, the opportunity cost of capital, expected returns and other appropriate factors. SVB Leerink performed a discounted cash flow analysis of Restoration Robotics' Upside Case and Base Case Forecasts to calculate the estimated present value of the **standalone unlevered, after-tax free cash flows that Restoration Robotics was forecasted to generate from March 15, 2019 (the Transaction announce date) through fiscal year 2025**, which unlevered, after-tax free cash flows were based on the Forecasts. SVB Leerink calculated terminal values for Restoration Robotics by applying terminal revenue multiples of 1.00x to 3.00x, which terminal revenue multiples were based on the revenue multiples of selected publicly traded medical technology companies that SVB Leerink deemed comparable for purposes of its analysis, to **2026 projected revenue**.

Proxy Statement at 106-7 (emphasis added).  The Proxy Statement fails, however to disclose the standalone unlevered, after-tax free cash flows that Restoration Robotics was forecasted to generate for the fiscal years 2023 through 2025, as well as the Company's estimated 2026 projected revenue, for each of the Upside Case and Base Case Forecasts.

41. Additionally, in connection with SVB Leerink's *Venus Concept Valuation Analysis—Discounted Cash Flow Analysis*, the Proxy Statement sets forth:

> A discounted cash flow analysis is a traditional valuation methodology used to derive a valuation of an asset or set of assets by calculating the "present value" of estimated future cash flows of the asset or set of assets. "Present value" refers to the current value of future cash flows or amounts and is obtained by discounting those future cash flows or amounts by a discount rate that takes into account macroeconomic assumptions and estimates of risk, the opportunity cost of capital, expected returns and other appropriate factors. SVB Leerink performed a discounted cash flow analysis of Venus Concept's Upside Case and Base Case Forecasts to calculate the estimated present value of the **standalone unlevered, after-tax free cash flows that Venus Concept was forecasted to generate from March 15, 2019 (the Transaction announcement date) through fiscal year 2025**, which unlevered, after-tax free cash flows were based on the Forecasts.  SVB Leerink calculated terminal values for Venus Concept by applying terminal revenue multiples of 1.00x to 3.00x, which terminal revenue multiples were based on the revenue multiples of selected publicly traded medical technology companies that SVB Leerink deemed comparable for purposes of its analysis, to **2026 projected revenue**.

*Id.* at 112 (emphasis added).  The Proxy Statement fails, however to disclose the standalone unlevered, after-tax free cash flows that Venus was forecasted to generate for the fiscal years 2023 through 2025, as well as Venus' estimated 2026 projected revenue, for each of its Upside Case and Base Case Forecasts.

42. Moreover, the Proxy Statement is false or misleading with respect to how unlevered free cash flows were calculated for each of the Restoration Robotics Upside Case Forecasts (calendar years 2021 and 2022), Venus Concept Base Case Forecasts and Venus Concept Upside Case Forecasts.  For each of the forecasts unlevered free cash flow was calculated as EBIT, plus interest income, plus other income.  Yet, as shown in the following tables, for each of the

Restoration Robotics Upside Case Forecasts (calendar years 2021 and 2022), Venus Concept Base Case Forecasts and Venus Concept Upside Case Forecasts, the EBIT amounts are higher than the unlevered free cash flow figures which does not comport with the definition of how the unlevered free cash flows were calculated.

The below table sets forth the Restoration Robotics Upside Case Forecasts:

|  | Projected Non-GAAP Calendar year ended December 31, | | | |
|---|---|---|---|---|
|  | 2019 | 2020 | 2021 | 2022 |
| **Revenue** | $29,043 | $40,073 | $55,246 | $75,611 |
| **Gross Profit** | $14,514 | $21,456 | $33,147 | $48,652 |
| **EBIT** | ($22,990) | ($18,621) | ($10,378) | $ 1,088 |
| **Unlevered Free Cash Flow** | ($20,114) | ($18,050) | ($11,472) | ($ 1,182) |

*Id.* at 116.

The below table sets forth the Venus Concept Base Case Forecasts:

|  | Projected Non-GAAP Calendar year ended December 31, | | | |
|---|---|---|---|---|
|  | 2019E | 2020E | 2021E | 2022E |
| **Revenue** | $113,250 | $127,500 | $144,000 | $158,975 |
| **Gross Profit** | $ 86,635 | $ 96,837 | $109,603 | $121,084 |
| **EBIT** | $ 6,811 | $ 12,536 | $ 21,043 | $ 27,037 |
| **Unlevered Free Cash Flow** | ($ 20,111) | ($ 6,612) | $ 7,966 | $ 13,534 |

*Id.* at 118.

The table below sets forth the Venus Concept Upside Case Forecasts:

|  | Projected Non-GAAP Calendar year ended December 31, | | | |
|---|---|---|---|---|
|  | 2019E | 2020E | 2021E | 2022E |
| **Revenue** | $117,250 | $135,600 | $150,500 | $165,550 |
| **Gross Profit** | $ 89,259 | $101,470 | $112,757 | $124,248 |
| **EBIT** | $ 8,933 | $ 16,582 | $ 23,817 | $ 29,858 |
| **Unlevered Free Cash Flow** | ($ 21,311) | ($ 4,037) | $ 11,679 | $ 15,561 |

*Id.*

43. The Proxy Statement must disclose the correct definition of how the unlevered free cash flows were calculated and all of the line items used to calculate the unlevered free cash flows

to correct the misleading statements in the Proxy Statement.

44. The omission of this information renders the statements in the "Restoration Robotics Forecasts," "Venus Concept Forecasts" and "Opinion of Restoration Robotics Financial Advisor" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning SVB Leerink's Financial Analyses***

45. The Proxy Statement describes SVB Leerink's fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of SVB Leerink's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Restoration Robotics' public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on the SVB Leerink's fairness opinion in determining whether to vote in favor of the Proposed Transaction.

46. With respect to SVB Leerink's *Restoration Robotics Valuation Analysis—Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the estimated present value of the standalone unlevered, after-tax free cash flows that Restoration Robotics was forecasted to generate from March 15, 2019 through fiscal year 2025; (ii) the implied terminal values for the Company resulting from the analysis; (iii) the implied perpetuity growth rates resulting from the analysis; and (iv) quantification of the inputs and assumptions underlying the discount rate range of 15.0% to 17.0%.

47. With respect to SVB Leerink's *Venus Concept Valuation Analysis—Discounted Cash Flow*, the Proxy Statement fails to disclose: (i) the estimated present value of the standalone unlevered, after-tax free cash flows that Venus was forecasted to generate from March 15, 2019 through fiscal year 2025; (ii) the implied terminal values for Venus resulting from the analysis; (iii)

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

the implied perpetuity growth rates resulting from the analysis; and (iv) quantification of the inputs and assumptions underlying the discount rate range of 12.0% to 14.0%.

48. When a banker's endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

49. The omission of this information renders the statements in the "Restoration Robotics Forecasts," "Venus Concept Forecasts" and "Opinion of Restoration Robotics Financial Advisor" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Company Insiders' and SVB Leerink's Potential Conflicts of Interest***

50. The Proxy Statement also fails to disclose the potential conflicts of interest faced by the Company's insiders and SVB Leerink.

51. For example, the Proxy Statement sets forth that "[i]n connection with the merger, Restoration Robotics' board of directors approved payment of cash bonuses to each of Messrs. Hair and Sullivan in the amounts of $142,500 and $90,000, respectively. Such transaction bonuses shall be payable shortly following the effective time of the merger, less applicable withholdings and deductions, subject to their continued service to Restoration Robotics until immediately prior to the effective time of the merger." *Id*. at 121. The Proxy Statement fails, however, to disclose when the Board agreed to the transaction bonuses for Hair and defendant Sullivan and all negotiations and communications regarding such transaction bonuses.

52. Additionally, the Proxy Statement sets forth:

SVB Leerink LLC is a full-service securities firm engaged in securities trading and brokerage activities as well as investment banking and financial advisory services. **In the past two years, SVB Leerink provided certain investment banking services to Venus Concept**, but did not receive any compensation from Venus Concept for such services. Except with respect to the Transaction, in the past two years, SVB

> Leerink has not been engaged to provide financial advisory or other services to Restoration Robotics, and, except as described below, has not received any compensation from Restoration Robotics during such period. In the ordinary course of business, SVB Leerink and its affiliates may, in the future, provide commercial and investment banking services to Restoration Robotics, Venus Concept or their respective affiliates and would expect to receive customary fees for the rendering of such services. In the ordinary course of their trading and brokerage activities, SVB Leerink or its affiliates have in the past and may in the future hold positions, for their own account or the accounts of their customers, in equity, debt or other securities of Venus Concept, Restoration Robotics or their respective affiliates. Consistent with applicable legal and regulatory requirements, SVB Leerink has adopted policies and procedures to establish and maintain the independence of its research departments and personnel. As a result, SVB Leerink's research analysts may hold views, make statements or investment recommendations and/or publish research reports with respect to Restoration Robotics and the proposed Transaction and other participants in the Transaction that differ from the views of SVB Leerink's investment banking personnel.

*Id*. at 113 (emphasis added).  The Proxy Statement fails, however, to disclose the certain investment banking services that SVB Leerink performed for Venus in the past two years.

53.     Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

54.     The omission of this information renders the statements in the "Background of the Merger," "Interests of Restoration Robotics' Directors and Executive Officers in the Merger" and "Opinion of Restoration Robotics Financial Advisor" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

55.     The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of Restoration Robotics will be unable to make a fully-informed decision whether to vote in favor of the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Class Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and SEC Rule 14a-9 Promulgated Thereunder**

56. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

57. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

58. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about the Company's and Venus' financial projections, the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, and potential conflicts of interest faced by Company insiders and the Company's financial advisor. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

59. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in making a voting decision on the Proposed Transaction.

60. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

61. Because of the false and misleading statements in the Proxy Statement, Plaintiff and the Class are threatened with irreparable harm, rendering money damages inadequate.

Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Class Claims Against the Individual Defendants for
Violations of Section 20(a) of the Exchange Act**

62. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

63. The Individual Defendants acted as controlling persons of Restoration Robotics within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Restoration Robotics and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

64. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

65. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

66. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they

reviewed and considered—descriptions the Company directors had input into.

67. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

68. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Restoration Robotics' stockholders will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Restoration Robotics, and against defendants, as follows:

A. Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

C. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all claims and issues so triable.

| | |
|---|---|
| Dated: September 24, 2019 | **WEISSLAW LLP**<br>Joel E. Elkins |
| | By: <u>/s/ Joel E. Elkins</u> |
| | Joel E. Elkins<br>9107 Wilshire Blvd., Suite 450<br>Beverly Hills, CA 90210<br>Telephone:  310/208-2800<br>Facsimile:   310/209-2348<br>    -and-<br>Richard A. Acocelli<br>1500 Broadway, 16th Floor<br>New York, NY  10036<br>Telephone: 212/682-3025<br>Facsimile:  212/682-3010 |
| | *Attorneys for Plaintiff* |

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS